IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Waters at Magnolia Bay, LP,<br>    Plaintiff,<br> v.<br><br>Vaughn & Melton Consulting Engineers, Inc.,<br>    Defendant<br><br>Vaughn & Melton Consulting Engineers, Inc.,<br>    Third-Party Plaintiff,<br> v.<br><br>Armada Development, LLC, Sherman Construction Co., Inc. and Gulf Stream Construction Company, Inc.,<br>    Third-Party Defendants.<br>and<br><br>Atlantic Housing Foundation, Inc.,<br>    Additional Counterclaim Defendant. | Civil Action No. 2:20-cv-2546-RMG<br><br><br>**ORDER AND OPINION** |

Before the Court is Plaintiff's emergency motion for a protective order. (Dkt. No. 63). Also before the Court is Plaintiff's motion to seal documents in support of its motion for a protective order. (Dkt. No. 65). For the reasons set forth below, the Court grants Plaintiff's motion to seal and denies Plaintiff's motion for a protective order.

**I. Background**

On March 5, 2021, Plaintiff produced roughly 1,800 pages of documents (the "Initial Production") to Defendant Vaughn & Melton Consulting Engineers, Inc. ("V&M"). (Dkt. No. 63 at 3). The Initial Production, which consisted of emails, was formatted as a single PDF. The Initial Production was "made with the assistance of General Counsel of Plaintiff in order to expedite discovery." (*Id.* at 9 n.2); (Dkt. No. 69-12 at 1) (March 2, 2021 email from Plaintiff's counsel to

-1-

V&M indicating that "[w]e're working with IT and our client to work through and review the remaining emails and should be able to supplement our production by Thursday as well").

Three days later, on March 8, 2021, V&M wrote to Plaintiff's counsel that the Initial Production was deficient, and that V&M would be filing a motion to compel. (Dkt. No. 69-4 at 1) (noting the Initial Production lacked metadata or attachments to emails). V&M then stated that the Initial Production appeared to contain roughly 300 pages of "potentially-privileged documents" (the "Privileged Documents"):

> As we were in the process of preparing exhibits to our motion to compel, we noticed that there are numerous emails between you and your client interspersed over the last 300 pages or so of the PDF. Given the format in which the emails were produced and the volume of potentially-privileged information, it seems unlikely that these emails were missed and that this was inadvertence on your part. **However, we are willing to treat these documents in accordance with Rule 26(b)(5)(B) if you notify us accordingly and provide us with an alternative form of production without any potentially-privileged information**.

(*Id.*) (emphasis added).

On March 11, 2021, V&M moved to compel Plaintiff to reproduce the Initial Production with all pertinent metadata and attachments. *See* (Dkt. No. 42). Therein, V&M noted that the Initial Production contained privileged materials. (*Id.* at 7 n.3) ("Additionally, counsel for Vaughn & Melton identified approximately 300 pages of emails within Waters' production which appear to be communications between attorney and client. Counsel for Vaughn & Melton requested counsel for Waters advise how they would like to proceed considering this disclosure. *At the time of filing this motion, counsel for Waters has not responded*.") (emphasis added); *see also* (Dkt. No. 60 at 13 n.6) (seeking leave to amend and noting that V&M had received potentially privileged documents in the Initial Production and that, as of June 21, 2021, V&M had received "no response" to its March 8, 2021 email). In response to V&M's motion to compel, Plaintiff "t[ook] control of

-2-

its client's email servers to perform its own capture and review of client emails." (Dkt. No. 63 at 8). On March 22, 24, and April 2, 2021, Plaintiff reproduced the Initial Production without the Privileged Documents. (Dkt. No. 63 at 9). "Plaintiff concedes its correspondence surrounding its March 22 and 24 and April 2 productions did not expressly state that the inadvertently produced privileged emails in the March 5 production should be destroyed." (*Id.*).

On June 29, 2021, V&M issued a Bates range of documents it intended to show Plaintiff's Rule 30(b)(6) deponent during a deposition scheduled for July 6, 2021. The range of documents included two designations from the Privileged Documents. (Dkt. No. 63 at 4) (noting V&M intended to question Plaintiff's Rule 30(b)(6) deponent regarding Waters at Magnolia Bay 009877-009886 and Waters at Magnolia Bay 009915-00917). On July 2, 2021, Plaintiff's counsel wrote to V&M that "those emails were clawed back when we replaced the March 5.pdf production of emails with Plaintiff's subsequent comprehensive production of emails in native format." (Dkt. No. 63-2 at 2). Over the July 4th weekend, the parties met and conferred regarding the Privileged Documents. (Dkt. Nos. 63-3, 63-4, 63-5). No resolution was reached. Plaintiff cancelled the pending depositions of Michael Nguyen and Andy Spraker. (Dkt. No. 63-5 at 2).

On July 5, 2021, Plaintiff filed the instant motion for a protective order. (Dkt. No. 63). Plaintiff asks the Court to find that Plaintiff properly clawed back the Privileged Documents pursuant to Fed. R. Evid. 502. Plaintiff also asks the Court to find that eight of the Privileged Documents contain attorney mental impressions which are "absolutely immune" from discovery. V&M opposes. (Dkt. No. 69). Plaintiff filed a reply. (Dkt. No. 72).

On July 6, 2021, Plaintiff filed a motion to seal whereby the Court would, pursuant to Fed. R. Civ. P. 26(b)(5)(B), review the Privileged Documents under seal while considering Plaintiff's motion for a protective order. (Dkt. Nos. 65, 68). "All parties consented that they did not oppose

the sealing of the documents while Plaintiff's Motion for Protective Order, ECF Doc. No. 63, is pending before the Court." (Dkt. No. 68 at 2).

Plaintiff's motions are fully briefed and ripe for disposition.

## II.     Legal Standards/Discussion

### a) Plaintiff's Motion to Seal

Pursuant to Local Civil Rule 5.03, a party seeking to file documents under seal shall file a motion and a memorandum, which shall:

> (1) identify, with specificity, the documents or portions thereof for which sealing is requested; (2) state the reasons why sealing is necessary; (3) explain (for each document or group of documents) why less drastic alternatives to sealing will not afford adequate protection; and (4) address the factors governing sealing of documents reflected in controlling case law.

Local Civil Rule 5.03, D.S.C. Furthermore, pursuant to the Local Rule, "[t]he Clerk shall provide public notice of the Motion to Seal in the manner directed by the Court ... this may be accomplished by docketing the motion in a manner that discloses its nature as a motion to seal." *Id.* The Supreme Court recognized a common law right to inspect and copy judicial records and documents in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). This right is not absolute, however, and the court "may, in its discretion, seal documents if the public's right of access is outweighed by competing interests." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288 (4th Cir. 2000), describes the process a district court must follow before sealing court documents:

> [B]efore a district court may seal any court documents, ... it must (1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives.

*Id.* at 302 (citations omitted).

The Court has reviewed the Privileged Documents *in camera*. The documents Plaintiff seeks to seal—for the purpose of the Court deciding Plaintiff's motion to compel—appear to be potentially privileged attorney-client communications. As no party opposes Plaintiff's motion to seal,[1] and as the Court finds the procedural requirements of Local Civil Rule 5.03 have been met, *see* (Dkt. Nos. 65, 68), the Court grants Plaintiff's motion to seal for the purpose of deciding Plaintiff's motion for a protective order.

### b) Plaintiff's Motion for a Protective Order

As stated by Plaintiff, "the crux of [Plaintiff's] motion is . . . whether the privilege and work product contained in the [Initial Production]—particularly the attorney mental provisions[2]—were waived as a result of" Plaintiff's failure to explicitly claw-back the Privileged Documents over the course of nearly fourth months. (Dkt. No. 72 at 3 n.1).

The attorney-client privilege may be waived. The question of whether that protection is waived is governed by federal law. Fed. R. Evid. 502(f). Fed. R. Evid. 502(b) provides:

> [T]he disclosure does not operate as a waiver in a federal . . . proceeding if:
> (1) the disclosure is inadvertent;
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
> (3) the holder promptly took reasonable steps to rectify the error . . . .

Fed. R. Evid. 502(b); Fed. R. Evid. 502(b) advisory committee's notes to 2008 amendment ("The Rule does not require the producing party to engage in a post-production review to determine

---

[1] Fed. R. Civ. P. 26(b)(5)(B) (noting that, to determine whether information produced in discovery is subject to a claim of privilege, a party "may promptly present the information to the court under seal for a determination of the claim").

[2] The parties do not dispute that the eight documents contain attorney mental impressions. These documents are: Waters at Magnolia Bay 009884 - 009886, Waters at Magnolia Bay 009847, Waters at Magnolia Bay 009839 - 009840, Waters at Magnolia Bay 009915 - 009916, Waters at Magnolia Bay 009714, Waters at Magnolia Bay 009754, Waters at Magnolia Bay 009910, and Waters at Magnolia Bay 009872.

whether any protected communication or information has been produced by mistake. *But the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently.*") (emphasis added).

The Court finds that Plaintiff waived its privilege over the contested documents. Even assuming that Plaintiff's production of the Privileged Documents was inadvertent,³ the Court cannot say, in any principled manner, that Plaintiff took reasonable steps to protect against disclosure or that Plaintiff acted with reasonable promptness to rectify its error once it was made aware that it had produced privileged documents. As it relates to protecting against disclosure, the Privileged Documents represent nearly a sixth of the Initial Production and, as V&M notes, it took V&M but three days to locate and explicitly bring to Plaintiff's attention the fact that the Initial Production contained the Privileged Documents—this despite Plaintiff's formatting the Initial Production as a single nearly 1,800-page PDF. Further, Plaintiff clearly did not act with reasonable promptness to claw-back the privileged documents. Plaintiff admits that, until July 2, 2021, it never explicitly stated that the "inadvertently produced emails in the March 5 production should be destroyed." (Dkt. No. 63 at 9). This was nearly four months after V&M's March 8, 2021 email to Plaintiff offering to treat the Privileged Documents as inadvertently produced. *See also* V&M's Motion to Compel, (Dkt. No. 42 at 7 n.3) (noting that the Initial Production contained roughly 300 pages of privileged documents, that V&M had notified Plaintiff of this fact, and that, as of March 11, 2021, "counsel for [Plaintiff] ha[d] not responded" to V&M); (Dkt. No. 60 at 13 n.6) (seeking leave to amend and noting, again, that V&M had received potentially privileged documents in the

---

³ *See Adelman v. Coastal Select Ins. Co.*, No. 9:17-CV-3356-DCN, 2019 WL 465600, at *4 (D.S.C. Feb. 6, 2019) (noting courts often define "inadvertence" as "an accidental oversight; a result of carelessness") (quoting Inadvertence, Black's Law Dictionary (10th ed. 2014)). *But see* Plaintiff's Motion for a Protective Order, (Dkt. No. 63 at 2) (admitting that "most of [Privileged Documents] are admittedly innocuous email chatter").

Initial Production and that, as of June 21, 2021, V&M had received "no response" to its March 8, 2021 correspondence cited above); *AdTrader Inc. v. Google, LC*, 405 F. Supp. 3d 862, 866-67 (N.D. Cal. 2019) (finding privilege waived where plaintiff made prominent use in a February 2019 filing of privileged material produced by defendant in December 2018 and which defendant only attempted to claw back in August 2019); *Id.* ("The disputed material contains a reference to legal matters, which (according to Google) reflect and paraphrase the advice of counsel. AdTrader's quotation from and reliance on this portion of the Yu email in February 2019 should have put Google on notice to at least inquire promptly about whether such a reference, in fact, reflected advice of counsel. Google did not inquire promptly, and the Court is not persuaded that it had no reason to suspect the material might be privileged simply because no lawyer was copied on the email exchange or referenced in it. Given the language of Ms. Yu's email and AdTrader's use of it, *Google had an obligation to investigate once the email came to its attention.*") (emphasis added). And while Plaintiff spends much of its briefing discussing the heightened protections afforded attorney work product against discovery, the "Court finds . . . the cases cited by Plaintiff . . . inapposite to the situation here because . . . the issue in this case is *not* whether Defendant was entitled to production of the Documents through the typical production vehicles . . . . [Instead, as] [t]he Documents *were already disclosed* to Defendants . . . the issue . . . [is] whether such disclosure constituted waiver of any privilege." *Standard Steam Trust LLC v. Windfall Minerals, LLC*, No. 11-cv-447-WJM-CBS, 2012 WL 13206394 (D. Colo. March 21, 2012) (emphasis added) (rejecting arguments similar to those advanced by Plaintiff and finding privileged waived); *see also In re Martin Marietta Corp.*, 856 F.2d 619, 626 (1988) (noting that while "opinion work product is to be accorded great protection by the courts . . . certainly actual disclosure of pure mental impression may be deemed waiver"); *Regional Airport Auth. of Louisville v. LFG, LLC*,

460 F.3d 697, 715 (6th Cir. 2006) (holding that disclosure of attorney mental impressions to expert constituted waiver and required that such documents be produced).

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to seal, (Dkt. No. 65), and **DENIES** Plaintiff's emergency motion for a protective order (Dkt. No. 63).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel<br>
Richard Mark Gergel<br>
United States District Judge

August 2, 2021
Charleston, South Carolina