IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Waters at Magnolia Bay, LP,<br>    Plaintiff,<br> v.<br><br>Vaughn & Melton Consulting Engineers, Inc.,<br>    Defendant<br><br>Vaughn & Melton Consulting Engineers, Inc.,<br>    Third-Party Plaintiff,<br> v.<br><br>Armada Development, LLC, Sherman Construction Co., Inc. and Gulf Stream Construction Company, Inc.,<br>    Third-Party Defendants.<br>and<br><br>Atlantic Housing Foundation, Inc.,<br>    Additional Counterclaim Defendant. | Civil Action No. 2:20-cv-2546-RMG<br><br>**ORDER AND OPINION** |

  Before the Court is Third-Party Defendant Armada Development, LLC ("Armada")'s motion to dismiss Defendant/Third-Party Plaintiff Vaughn & Melton Consulting Engineers, Inc.'s third-party complaint. (Dkt. No. 101). For the reasons set forth below, the Court grants in part and denies in part Armada's motion.

**I.  Background**

  This matter involves the design and construction of a multi-family housing project in Summerville, South Carolina known as the Waters at Magnolia Bay (the "Project"). The Plaintiff in this action, Waters at Magnolia Bay, LP ("Owner"), allegedly developed and owns the Project. Defendant/Third-Party Plaintiff Vaughn & Melton Consulting Engineers, Inc. ("Vaughn") allegedly served as the engineer for the Project. Counterclaim Defendant Atlantic Housing

-1-

Foundation, Inc. ("AHF") is allegedly Owner's general partner. Counterclaim Defendant Armada is alleged to have acted as the development and/or construction manager for AHF and Owner. In this role, Armada allegedly "agreed to identify and secure control of potential properties for development, obtain 'all municipal and regulatory entitlements,' prepare all design documents, arrange for any necessary field testing, select a general contractor, and 'be responsible for construction, as per plans and specifications approved by'" AHF. Hatch + Ulland Owen Architects ("Architect") allegedly served as the architect for the Project and Sherman Construction, Inc. ("Contractor") and Gulf Stream Construction ("Subcontractor") allegedly served, respectively, as the general contractor and subcontractor on the Project. The United States Department of Housing and Urban Development ("HUD") allegedly financed the Project. *See* (Dkt. No. 75 at 9, 26-27).

Vaughn claims that during the Project's construction various change orders were submitted to HUD for approval, but that "[m]any of the Civil Change Orders submitted by the Contractor to [Owner] and then to HUD contain costs that are inflated and unjustified." (*Id.* ¶ 36). Vaughn alleges the increased costs benefited AHF and Armada. *See* (*id.* ¶ 148) ("AHF and Armada together received an increase in their fees equal to 15% of each change order."). Vaughn alleges that these inflated and unjustified costs form the heart of Owner's complaint against it. (*Id.* ¶ 35) ("Sums associated with Contractor change orders relating to the civil site work (the 'Civil Change Orders') and paid to the Contractor by [Owner] form the basis of the [Owner's] claims against [Vaughn] in this litigation."); *see generally* Owner Complaint, (Dkt. No. 1-1) (alleging that Vaughn was negligent in its duties as engineer on the project and that, *inter alia*, this negligence increased the Project's cost). Vaughn, however, asserts that it is not responsible for inflated or otherwise unjustified change orders. *See, e.g.*, (Dkt. No. 75 ¶ 157) ("Had the services [Owner] paid [Vaughn] to perform on the Project included review of change orders, [Vaughn] would have denied many of

the Civil Change Orders that [Owner] now . . . claims as damages in this litigation."). Vaughn asserts Armada was responsible for the above discussed Civil Change Orders. *See* (*id.* ¶ 187) ("Armada was responsible for managing the Project on behalf of [Owner], including the review and approval of the change orders which [Owner] alleges form the basis of its claims for damages.").

Vaughn further alleges that "[d]uring construction, on March 3, 2017, in email correspondence, Armada told [Owner] 'We have too much evidence and direct support from Sherman and our site contractor, Gulfstream, to disregard how much money [Vaughn's] errors and omissions have cost us. Ultimately, we will prevail with most of our claims[,] but we will have to take that action after closing because they will be required to execute our final plans and as-builts at final closing." (*Id.* ¶¶ 83-84) (citing Exhibit B, (Dkt. No. 75-2)). Around this "time, [Vaughn] requested multiple updates from [Owner] on its unpaid invoices." (*Id.* ¶ 85). "On April 25, 2017, Armada . . . told [Vaughn] '[it] ha[d] approved the invoices below for payment.'" (*Id.* ¶ 86). Vaughn continued working on the Project until it issued a "final ALTA" in August 2017. (*Id.* ¶ 87). "[T]he ALTA survey was necessary to complete the [P]roject and allow it to be occupied." (*Id.* ¶ 88). Vaughn alleges, however, that it was never paid for the above noted invoices and that it is owed "no less than $59,852.18" for services on the Project. (*Id.* ¶ 54).

In its Third-Party Complaint, as against Armada, Vaughn brings claims for (1) equitable indemnification; (2) violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.* ("SCUTPA"); (3) fraud; and (4) negligent misrepresentation.

Armada now moves to dismiss Vaughn's counterclaims against it. (Dkt. No. 101). Vaughn filed a response in opposition, (Dkt. No. 103), to which Armada filed a reply, (Dkt. No. 104).

Armada's motion is fully briefed and ripe for disposition.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." A claim survives the motion if the complaint provides enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This is a test of the legal sufficiency of the complaint and, therefore, Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Instead, the district court's "inquiry then is limited to whether the allegations constitute a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. (internal quotation marks and citation omitted). For that analysis, the district court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"; however, it must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## III. Discussion

First, Armada argues that Vaughn's claims for fraud, negligent misrepresentation, and violation of SCUTPA are time barred. *See* (Dkt. No 101-1 at 6-8) (arguing said claims are governed by three-year statutes of limitations and that Vaughn should have been aware of its claims, at the latest, in August 2017); Vaughn Third-Party Complaint, (Dkt. No. 75) (filed July 21, 2021); *see also* § 39-5-150 (SCUTPA); § 15-3-530(7) (fraud); § 15-3-530(5) (negligent misrepresentation). For its part, while Vaughn agrees said claims are subject to three-year statutes of limitations, Vaughn argues it could not have reasonably discovered these claims until March 2021. *See* (Dkt. No. 103 at 4) ("[W]hile the Engineer did know of its cause of action for breach of contract based

on unpaid invoices more than three years prior to the filing of the Third-Party Complaint, it did not become aware of the basis for its other claims until March 2021—when [Owner] produced emails in discovery proving that Armada, AHF, and [Owner] were acting in concert to deliberately mislead the Engineer to induce it to continue performing services on the Project without being paid.").

Typically, affirmative defenses, such as a limitations bar, may not be raised in a Rule 12(b)(6) motion because it is intended merely to test the legal adequacy of the complaint. *See Brooks v. City of Winston–Salem,* 85 F.3d 178, 181 (4th Cir.1996). A defense of the statute of limitations may be raised in a Rule 12(b)(6) motion where that defense appears clearly on the face of the complaint. *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Robinson v. Johnson,* 313 F.3d 128, 135 (3d Cir. 2002) (citation omitted).

In South Carolina, under "the discovery rule, the statute of limitations only begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct." *True v. Monteith*, 327 S.C. 116, 489 S.E.2d 615, 616 (1997). The "exercise of reasonable diligence" requires that the injured party "act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on notice that a claim against another party might exist." *Dean v. Ruscon Corp.*, 321 S.C. 360, 468 S.E.2d 645, 647 (1996). The date on which the discovery of a cause of action should have been made is an objective question. *Bayle v. S. Carolina Dep't of Transp.*, 344 S.C. 115, 542 S.E.2d 736, 740 (2001).

At this stage, reading all well-pled factual allegations in a light most favorable to Vaughn, the nonmoving party, the Court declines to find that Vaughn's claims for fraud, negligent misrepresentation, and violation of SCUTPA are time barred. Vaughn's complaint contains no facts indicating when Vaughn should have discovered the alleged fraud, and thus does not conclusively show that the above claims are time bared. *See, e.g.*, *Smith v. Flagstar Bank, F.S.B.*, No. 3:14–cv–741, 2015 WL 1221270, at *4 (E.D. Va. 2015) (allowing fraud claims under similar facts to survive a motion to dismiss on statute of limitation grounds). After discovery, and on a more complete evidentiary record, Armada may raise this issue again.[1] For now, however, the Court denies the motion to dismiss the above claims on statute of limitations grounds

Accordingly, the Court denies Armada's motion on the above points.

Next, Armada argues that Vaughn's equitable indemnification claim fails because the "the facts alleged show that Vaughn['s] own negligence is the cause of its harm." (Dkt. No. 101 at 2; Dkt. No. 101-1 at 10). Armada also argues that Vaughn fails to adequately plead that Armada was the proximate cause of Vaughn's injuries. (Dkt. No. 101-1 at 11).

The Court denies Armada's motion on the above points. As it concerns Armada's argument that Vaughn's "own negligence is the cause of its harm," the Court rejects the argument out of hand. A question of fact clearly exists as to whether the damages Owner is seeking against Vaughn, (Dkt. No. 1-1), arise from Vaughn's *own* negligence, as Owner and Armada seemingly argue, *see* (Dkt. No. 101-1 at 11) ("[B]ut for [Vaughn's] negligence in the site design, the change

---

[1] In its motion to dismiss, Armada also argues that Vaughn's claims for claims for fraud, negligent misrepresentation, and violation of SCUTPA are time barred because the Third-Party Complaint does not "relate back" to Vaughn's original answer. (Dkt. No. 101-1 at 8). Because questions of fact exist as to when Vaughn should have reasonably known of its claims against Armada—questions which might obviate a need to consider whether Vaughn's Third-Party Complaint relates back—the Court declines to address "relation back" at this time.

orders that are the subject of this dispute would never have needed to be approved."), or from that of *other* entities such as, *inter alia*, Armada, *see* (Dkt. No. 75 ¶ 187) ("Armada was responsible for managing the Project on behalf of [Owner], including the review and approval of the change orders which [Owner] alleges form the basis of its claims for damages."); (*Id.* ¶ 36) ("Many of the Civil Change Orders submitted by the Contractor to [Owner] and then to HUD contain costs that are inflated and unjustified."); (*Id.* ¶ 148) ("AHF and Armada together received an increase in their fees equal to 15% of each change order."). As to Armada's argument that Vaughn has not properly alleged that its injury was the "natural and probable consequence" of Armada's negligence, the Court finds the argument equally unavailing. Again, Armada's argument turns on a question of fact which cannot be resolved at the motion to dismiss stage—namely whether Vaughn was responsible for increased costs on the Project due to its engineering work as opposed to, for example, Armada and *its* allegedly wrongful approval of civil change orders. *Compare* (Dkt. No. 101-1 at 11-12) ("[Vaughn] alleges only Armada's negligence in approving changes orders needed as a result of [Vaughn's] negligence, thus exacerbating the amount of damages suffered by [Vaughn]. These damages are the result of, not the cause of, Engineer's negligence.") *with* (Dkt. No. 75 ¶ 187) ("Armada was responsible for managing the Project on behalf of [Owner], including the review and approval of the change orders which [Owner] alleges form the basis of its claims for damages.").

Accordingly, the Court denies Armada's motion on the above points.

Last, Armada argues that Vaughn's claim for violation of SCUTPA must be dismissed because Armada has not adequately pled the public interest requirement.

To state a SCUTPA claim, a plaintiff must sufficiently allege "(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages

as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Ameristone Tile, LLC v. Ceramic Consulting Corp., Inc.*, 966 F. Supp. 2d 604, 621 (D.S.C. 2013). Under South Carolina law, "unfair or deceptive acts have an adverse impact upon the [public] if those acts have the potential for repetition." *Id.* "Potential for repetition can be demonstrated by either 'showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence' or 'showing the company's procedures created a potential for repetition of the unfair and deceptive acts.'" *Id.* (citing *Bessinger v. Food Lion, Inc.*, 305 F.Supp.2d 574, 581 (D.S.C. 2003)). Conduct, however, "'that affects only the parties to the transaction and not the public interest provides no basis for a SCUTPA claim.'" *Id.*

Here, even viewing the facts in a light most favorable to it, Vaughn pleads no facts showing Armada acted similarly in the past nor does Vaughn plead facts showing Armada's alleged wrongful approval of civil changes orders was the result of "specific procedures or business practices that create the potential for repetition." *See Machinery Solutions, Inc. v. Doosan Corp.*, No. 3:15-cv-03447, 2016 WL 2756429, at *3 (D.S.C. May 12, 2016) (dismissing SCUTPA claim in at-will distributor context and noting that "[a]bsent specific facts, a plaintiff is merely offering a speculative claim about adverse public impact"). Vaughn's SCUTPA claim against Armada is therefore dismissed. *See Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 3:15-cv-01300-JMC, 2015 WL 7568613, at *9 (D.S.C. Nov. 24, 2015) ("The fact that an alleged misconduct occurred is not sufficient to establish that the misconduct amounts to a procedure or business practice."); *Id.* ("Moreover, the mere proof that the actor is still alive and engaged in the same business is not sufficient to establish this element.") (internal quotation marks omitted).

Accordingly, the Court dismisses Vaughn's SCUTPA claim.

## IV.     Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Armada's motion to dismiss Vaughn's Third-Party Complaint. (Dkt. No. 101). Armada's motion is **GRANTED** to the extent that the Court dismisses Vaughn's claim for violation of SCUTPA. The motion is otherwise **DENIED.**

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

October 28, 2021
Charleston, South Carolina